IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SRIRAM SARAVANAN SHANMUGAVELANDY | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-18-4645 |
| UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

Sriram Saravanan Shanmugavelandy, representing himself, has sued the University of Texas M.D. Anderson Cancer Center, alleging that the M.D. Anderson Cancer Center discriminated against him based on his national origin (Asian Indian) and his sex (male) by denying him a promotion; retaliated against him for asserting rights under Title VII of the Civil Rights Act; and harassed him severely enough to create a hostile work environment.

The M.D. Anderson Cancer Center has moved to dismiss the amended complaint, arguing that sovereign immunity bars Shanmugavelandy's claims and that he has not alleged enough facts to state a claim. Shanmugavelandy has responded. (Docket Entry Nos. 52, 56). The M.D. Anderson Cancer Center and Shanmugavelandy filed supplemental briefs, as permitted by the court. (Docket Entry Nos. 55, 60). After a careful review of the complaint and amended complaint and the documents attached to it, the motion and response, the supplemental briefs, and the applicable law, the court grants the motion to dismiss, with prejudice and without leave to amend, because amendment would be futile. An order of dismissal is separately entered. The reasons are explained below.

## I. Background

The facts are drawn from the allegations of Shanmugavelandy's initial and amended complaints, accepted as true for this motion, and the Equal Employment Opportunity Commission documents that are attached, referred to, and central to, the complaints. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

From April 2015 to May 2017, Shanmugavelandy worked as a research assistant for the M.D. Anderson Cancer Center, in Dr. Nikki Millward's lab. Shanmugavelandy was the only Asian-Indian male working as a research assistant in the lab. In 2016, Shanmugavelandy asked for a promotion to obtain a stronger basis for permanent resident status, based on his "extraordinary ability." 8 C.F.R. § 204.5(h). Shanmugavelandy also needed the promotion "to increase [his] pay so that [he] could pay [his] [i]mmigration attorney bill." (Docket Entry No. 51 at 2). Shanmugavelandy alleges that in May 2016, he "was specifically told . . . that the department would be able to promote [him]." (Docket Entry No. 1 at 10). Shanmugavelandy also began applying for other positions at the M.D. Anderson Cancer Center.

In September 2016, Shanmugavelandy attended a department meeting during which promotions were announced. Shanmugavelandy did not receive a promotion, but a "Korean male Research Assistant" and a "Taiwanese female Senior Research Assistant" did. (*Id.* at 10). Shanmugavelandy alleges that he had "more research experience and journal publications" than these individuals; he has published a paper with the Korean male; and the M.D. Anderson Cancer Center did not promote any Indian males. (*Id.*; Docket Entry No. 51 at 4). When the Korean male was promoted, Shanmugavelandy "realized that [he had] been played by everyone and misled." (Docket Entry No. 51 at 4).

Shanmugavelandy met with Dr. Millward, the department chair, after the department meeting. She told him that he could not receive "a promotion or salary increase because she would not be able to guarantee [his] job in the long run if [he were] promoted or given a raise." (Docket Entry No. 1 at 10). She also told Shanmugavelandy that he could not receive a "two level[]" promotion "because of institutional policies." (Docket Entry No. 51 at 2). Shanmugavelandy alleges that these explanations did not make sense because research assistants had been promoted in the past, and because some unidentified person had told him in May, three months earlier, that he would be promoted. (Docket Entry No. 1 at 10).

Around the same time, Shanmugavelandy alleged, an administrator at M.D. Anderson Cancer Center posted a scene from the movie "Second Hand Lion" on a social-media website. (Docket Entry No. 51 at 3). Shanmugavelandy "felt offended" and thought that the clip had been directed at him, apparently because it referred to "outsider[s]." (*Id.*). In November 2017, after Shanmugavelandy received an "excellent" annual performance evaluation, he still did not receive a promotion or salary increase. (Docket Entry No. 58-1 at 2–5; Docket Entry No. 1 at 10). According to Shanmugavelandy, Dr. Millward told him that he had "done an exceptional job[,] but there was no increment and/or promotion for [his] performance." (Docket Entry No. 60 at 2).

Shanmugavelandy "began to suspect" that his applications for other M.D. Anderson Cancer Center positions "had been rejected for improper and discriminatory reasons." (Docket Entry No. 1 at 10). The M.D. Anderson Cancer Center had stated that Shanmugavelandy was welcome to apply for other positions, but his manager, Marcia Richard, and a Dr. Bratip later told him to "stop applying for jobs with [the] MD Anderson Cancer Center" and to "apply at other institutions in Houston." (*Id.*). Shanmugavelandy's telephone discussions with M.D. Anderson Cancer Center employees about his employment applications were deleted while he was on vacation. (*Id.*).

Shanmugavelandy suspected that the M.D. Anderson Cancer Center "intentionally blocked [his] applications for other internal positions for discriminatory reasons." (*Id.*).

Shanmugavelandy alleges two other workplace incidents. The first concerned his decision to park in a "short term / visitor" spot. (Docket Entry No. 51 at 2). When Shanmugavelandy parked his car there, "people from [his] department left notices saying that this [is] not a parking lot," but "other employe[e]s also had parked in that area . . . for the whole day and they were not given any notice." (*Id.* at 2). The second incident was a meeting he had with Dr. Le Roux and her husband, Dr. "Dawid" Schellingerhout. (*Id.* at 3). It is unclear from the initial and amended complaints whether Dr. Le Roux or Dr. Schellingerhout worked in the same department or lab as Shanmugavelandy. Shanmugavelandy alleges that these doctors "targeted" him by asking: "whether [he] was talking to one of [Dr. Le Roux's employees]"; "if people in [Dr. Le Roux's] lab interact with each other when she is not around"; and "other questions which made [him] humiliated and scared." (*Id.*). Shanmugavelandy understood these questions as "saying [he had] misbehaved" and as "two person[s] from the same country talk[ing] about their personal li[ves]." (*Id.*). Shanmugavelandy "resigned" a "day or two" after this meeting, in May 2017, because he "was scared," and because of Dr. Le Roux's "unrelenting effort to fix [him]."[1] (*Id.*; Docket Entry No. 60 at 3). According to Shanmugavelandy, this meeting "aggravated the situation where [he] was already targeted and isolated in the department." (Docket Entry No. 51 at 3).

Shanmugavelandy filed a charge of discrimination with the Equal Employment Opportunity Commission in July 2017. (*Id.* at 9). He alleged that the M.D. Anderson Cancer Center discriminated against him based on his national origin and sex by denying him a promotion.

---

[1] Shanmugavelandy alleges that Dr. Le Roux "is well known in the department for targeting people and getting them into trouble." (Docket Entry No. 60 at 3).

4

(*Id.*). He did not assert retaliation or harassment claims, but his factual recitation did allege that the M.D. Anderson Cancer Center had created a hostile work environment. The EEOC dismissed Shanmugavelandy's charge in May 2018, finding no evidence of discrimination based on national origin or sex. (Docket Entry No. 36-1).

In August 2017, Shanmugavelandy sued the M.D. Anderson Cancer Center in the Northern District of Illinois, asserting discrimination, retaliation, and a hostile work environment. (Docket Entry No. 1). He alleged that the M.D. Anderson Cancer Center's actions caused him stress and weight gain, contributing to a diabetes diagnosis. Shanmugavelandy moved to have an attorney appointed, but the court denied the motion, finding that he could afford an attorney based on his salary. (Docket Entry Nos. 4, 13). The M.D. Anderson Cancer Center moved to dismiss for lack of personal jurisdiction, and Shanmugavelandy responded. (Docket Entry Nos. 16–17). The court granted the motion and transferred the case to the Southern District of Texas, where the M.D. Anderson Cancer Center has its principal place of business. (Docket Entry No. 25).

The M.D. Anderson Cancer Center moved to dismiss for failure to state a claim, Shanmugavelandy did not respond, and the court dismissed his claims, without prejudice and with leave to amend. (Docket Entry Nos. 36, 47). Shanmugavelandy filed an amended complaint alleging additional facts. (Docket Entry No. 51). The M.D. Anderson Cancer Center moved to dismiss the amended complaint, arguing that sovereign immunity bars Shanmugavelandy's claims and that Shanmugavelandy has not made a *prima facie* showing of discrimination, a hostile work environment, or retaliation. (Docket Entry No. 52). The M.D. Anderson Cancer Center filed a supplemental brief, at the court's request, and Shanmugavelandy responded. (Docket Entry No. 53, 54, 56). The court allowed Shanmugavelandy to file a supplemental brief, and he did so. (Docket Entry No. 58–59, 60).

The parties' arguments are considered below.

## II.  The Legal Standard on a Motion to Dismiss

"The district court is to construe liberally the briefs of *pro se* litigants and apply less stringent standards to them than to parties represented by counsel." *Kiper v. BAC Home Loans Serv., LP*, 884 F. Supp. 2d 561, 567 (S.D. Tex. 2012) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  But a "*pro se* plaintiff's complaint 'must set forth facts giving rise to a claim on which relief may be granted.'" *Simmons v. Methodist Hosps. of Dall.*, 106 F. Supp. 3d 799, 803 (N.D. Tex. 2015) (quoting *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam)).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in

6

favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). The court may deny a motion to amend for futility if an amended complaint would fail to state a claim upon which relief could be granted. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). If a *pro se* plaintiff "has already pleaded his 'best case,'" the court need not grant leave to amend. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court." *Pervasive Software*, 688 F.3d at 232 (quotation omitted).

### III. Analysis

The M.D. Anderson Cancer Center argues that sovereign immunity bars Shanmugavelandy's claims. (Docket Entry No. 52 at 5–6). Because Shanmugavelandy asserts discrimination and retaliation claims under Title VII, and Congress has abrogated state sovereign immunity against Title VII claims, these claims are not barred. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 n.1 (5th Cir. 2002) ("Sovereign immunity does not bar . . . Title VII claims." (citing *Ussery v. La. ex rel. La Dep't of Health & Hosps.*, 150 F.3d 431, 434–35 (5th Cir. 1998))); *Khan v. S. Univ. & Agric. & Mech. Coll. Bd. of Supervisors*, No. 03-30169, 2005 WL 1994301, at *2 (5th Cir. Aug. 19, 2005) (per curiam); *Cephus v. Tex. Health & Human Servs. Comm'n*, 146 F. Supp. 3d 818, 827 n.2 (S.D. Tex. 2015); *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 383 (M.D. La. 2012).

7

Shanmugavelandy's discrimination, hostile-work-environment, and retaliation claims rely on circumstantial evidence and Shanmugavelandy must allege facts that meet the elements of his claims. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

A.  **Discrimination**

To meet the elements of a *prima facie* case of discrimination based on national origin or sex, Shanmugavelandy must allege facts showing that he: (1) belongs to a protected class; (2) was qualified for the position that he sought; (3) experienced an adverse employment action; and (4) was treated less favorably than others who are similarly situated but outside his protected class. *Id.* "The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). "This coworker, known as a comparator, must hold the same job or hold the same job responsibilities as the Title VII claimant; must share the same supervisor or have his employment status determined by the same person as the Title VII claimant; and must have a history of violations or infringements similar to that of the Title VII claimant." *Id.* (alteration and quotation omitted).

Shanmugavelandy's amended complaint contains no factual allegations describing the position or positions he sought through promotion or his employment applications, or how his qualifications made him eligible for those positions. Nor has Shanmugavelandy identified a valid comparator. Shanmugavelandy admits that he was "doing in-vivo (Animal research) in vitro cell based research," while the Korean male who was promoted was "writing computer codes and running MRI (imaging)." (Docket Entry No. 56 at 1–2). Because the Korean male had different job responsibilities than Shanmugavelandy, he is not a valid comparator. Shanmugavelandy

alleges that the Taiwanese female who was promoted had the same supervisor, Marcia Richard, but worked in a different lab. (*See id.* at 2; Docket Entry No. 1 at 10). Shanmugavelandy has not alleged facts supporting a plausible inference that the Taiwanese female had the same job and responsibilities, or a similar job history. Dr. Millward's alleged statement that "there was no increment and/or promotion for [Shanmugavelandy's] performance" does not support a plausible inference that another employee was treated more favorably than him under nearly identical circumstances. (Docket Entry No. 60 at 2). Shanmugavelandy has not alleged enough facts to make a *prima facie* showing that he was passed over for promotion based on discrimination. Shanmugavelandy's discrimination claim is dismissed.

### B. Hostile Work Environment

To state a *prima face* hostile work environment claim, a plaintiff must allege facts showing that: (1) he belongs to a protected group; (2) he faced unwelcome harassment; (3) the harassment was based on belonging to the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

"Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Ramsey*, 286 F.3d at 268). In determining whether harassment is severe or pervasive enough, "all of the circumstances must be taken into consideration," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Ramsey*, 286 F.3d at 268). The

9

work environment has to be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "[S]imple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347–48 (5th Cir. 2007) (quoting *Hockman v. Westward Comm'cns, LLC*¸ 407 F.3d 317, 328 (5th Cir. 2004)).

Shanmugavelandy alleges that a note was left on his car telling him not to park in a visitor spot; an administrator used his personal social-media account to post a movie clip, which Shanmugavelandy found offensive; and two doctors asked him about how employees interacted in the lab. (Docket Entry No. at 10; Docket Entry No. 51 at 1–3). These three incidents, taken together, are not close to the sort of severe and pervasive conduct that can give rise to a hostile-work-environment claim. *See Hernandez*, 670 F.3d at 651. And Shanmugavelandy has not alleged facts supporting a plausible inference that the incidents were based on his national origin or sex, or that the M.D. Anderson Cancer Center knew or should have known about the three incidents. Shanmugavelandy's hostile work environment claim is dismissed.

### C. Retaliation

To allege facts stating a *prima facie* claim of retaliation, Shanmugavelandy must allege that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the adverse employment action and the protected activity. *Alkhawaldeh*, 851 F.3d at 427. In his supplemental brief, Shanmugavelandy admitted that he "didn't participate in any . . . protect[ed] activity." (Docket Entry No. 60 at 1). Because Shanmugavelandy has not alleged facts that could show that he complained to the M.D. Anderson Cancer Center about discriminatory treatment, or that he

engaged in some other protected activity, he cannot make a *prima facie* showing of retaliation. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008) ("[N]ot all abstract grumblings or vague expressions of discontent are actionable as complaints." (quotation omitted)).

## IV. Conclusion

Shanmugavelandy's amended complaint, liberally construed, fails to state a claim. His amended complaint is dismissed, with prejudice and without leave to amend, because Shanmugavelandy has amended once; the court has no basis to find that Shanmugavelandy has not pleaded his best case; and given the allegations in the amended complaint, it is clear that further amendment would be futile. *See Brewster*, 587 F.3d at 768. The M.D. Anderson Cancer Center's motion to dismiss the amended complaint is granted. (Docket Entry Nos. 52, 55). An order of dismissal is separately entered.

SIGNED on August 7, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge